UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, | Case No. 2:15-cv-01139-JCM-PAL |
| Plaintiff, | ORDER |
| v. | |
| TALASERA AND VICANTO HOMEOWNERS' ASSOCIATION, *et al.*, | |
| Defendants. | |

Presently before the court is defendant/counterclaimant SFR Investments Pool 1, LLC's ("SFR") motion for summary judgment. (ECF No. 62). Plaintiff/counterdefendant Deutsche Bank National Trust Company as trustee for the GSAA trust pass-through certificates, series 2006-8 ("Deutsche Bank") and crossdefendants Nationstar Mortgage LLC ("Nationstar") and Bank of America, N.A. ("BANA" and collectively, with Deutsche Bank and BANA, as the "Banks") filed a response (ECF No. 69), to which SFR replied (ECF No. 75).

Also before the court is defendant Talasera and Vicanto Homeowners' Association's (the "HOA") motion to dismiss. (ECF No. 72). Deutsche Bank filed a response (ECF No. 78), to which the HOA replied (ECF No. 86).

Also before the court is the Banks' motion for summary judgment. (ECF No. 89).

**I.     Facts**

This case involves a dispute over real property located at 9165 Cantina Creek Court, Las Vegas, NV 89178 (the "property").

On February 1, 2006, David and Keri Bases (the "borrowers") obtained a loan in the

amount of $377,000.00 from Ryland Mortgage Company to purchase the property, which was secured by a deed of trust recorded on February 14, 2006.  (ECF Nos. 55; 69).

The deed of trust was assigned to BAC Home Loans Servicing, LP, fka Countrywide Home Loans Servicing, LP ("BAC") via an assignment of deed of trust recorded June 13, 2011.  (ECF No. 22 at 13).  BANA is the successor by merger to BAC, effective July 2011.  (ECF Nos. 22 at 13; 69 at 4).

On December 29, 2011, Nevada Association Services, Inc. ("NAS"), acting on behalf of the HOA, recorded a notice of delinquent assessment lien, stating an amount due of $1,099.40. (ECF No. 55).  On February 29, 2012, NAS recorded a notice of default and election to sell to satisfy the delinquent assessment lien, stating an amount due of $1,942.90.  (ECF No. 55).

On March 26, 2012, BANA requested a superpriority demand payoff from NAS, to which NAS did not respond.  (ECF No. 55).  BANA determined the superpriority portion of the lien to be $765.00, and tendered that amount to NAS on April 12, 2012, which NAS allegedly rejected. (ECF No. 55).

On August 30, 2012, NAS recorded a notice of trustee's sale, stating an amount due of $3,483.57.  (ECF No. 55).  On September 21, 2012, SFR purchased the property at the foreclosure sale for $8,800.00.  (ECF No. 55).  A foreclosure deed in favor of SFR was recorded on September 25, 2012.  (ECF No. 55).

BANA assigned the deed of trust to Nationstar via an assignment of deed of trust recorded August 15, 2013.  (ECF No. 22 at 13).  Thereafter, Nationstar assigned the deed of trust to Deutsche Bank via an assignment of deed of trust recorded September 4, 2014.  (ECF No. 22 at 14).  On January 23, 2015, Nationstar recorded a request for notice against the property.  (ECF No. 22 at 14).

On June 16, 2015, Deutsche Bank filed a complaint (ECF No. 1), which was later amended on May 19, 2016 (ECF No. 55).  In the amended complaint, Deutsche Bank alleges four claims for relief: (1) quiet title/declaratory relief; (2) breach of NRS 116.1113 against the HOA; (3) wrongful foreclosure against the HOA; and (4) injunctive relief against SFR.  (ECF No. 55).

On September 18, 2015, SFR filed a counterclaim against Deutsche Bank and a

1  crossclaim against Nationstar, BANA, and the borrowers, alleging three causes of action: (1)

2  quiet title/declaratory relief; (2) preliminary and permanent injunction; and (3) slander of title

3  against the Banks.  (ECF No. 22).

4      In the instant motions, SFR (ECF No. 62) and the Banks (ECF No. 89) move for

5  summary judgment on their claims, and the HOA moves to dismiss Deutsche Bank's claims

6  against it (ECF No. 72).  The court will address each as it sees fit.[1]

## II.   Legal Standards

### A.   Motion to Dismiss

9  A court may dismiss a complaint for "failure to state a claim upon which relief can be granted."

10  Fed. R. Civ. P. 12(b)(6).  A properly pled complaint must provide "[a] short and plain statement

11  of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *Bell Atlantic*

12  *Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While Rule 8 does not require detailed factual

13  allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the

14  elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

15      "Factual allegations must be enough to rise above the speculative level."  *Twombly*, 550

16  U.S. at 555.  Thus, to survive a motion to dismiss, a complaint must contain sufficient factual

17  matter to "state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (citation

18  omitted).

19      In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply

20  when considering motions to dismiss.  First, the court must accept as true all well-pled factual

21  allegations in the complaint; however, legal conclusions are not entitled to the assumption of

22  truth.  *Id.* at 678–79.  Mere recitals of the elements of a cause of action, supported only by

23  conclusory statements, do not suffice.  *Id.* at 678.

---

25  [1] As an initial matter, the court takes judicial notice of the following recorded documents: first deed of trust (ECF No. 62, exh. 4); notice of delinquent assessment (ECF No. 62, exh. 6);

26  notice of default and election to sell (ECF No. 62, exh. 8); notice of trustee's sale (ECF No. 62, exh. 11); trustee's deed upon sale (ECF No. 62, exh. 23); and assignments of deed of trust (ECF

27  No. 62, exhs. 18, 19).  *See, e.g.*, *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011) (holding that a court may take judicial notice of public records if the facts noticed are not

28  subject to reasonable dispute); *Intri-Plex Tech., Inv. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, in relevant part:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

## B.   Summary Judgment

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

/ / /

4

In determining summary judgment, a court applies a burden-shifting analysis.  The moving party must first satisfy its initial burden.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).
In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial.  *See Celotex*, 477 U.S. at 324.

/ / /

5

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial.  *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986).  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted.  *See id.* at 249–50.

**III.   Discussion**

>   **A.   The HOA's Motion to Dismiss** (ECF No. 72)

>>   ***1.   Quiet Title/Declaratory Relief*** *(claim 1)*

The HOA argues that Deutsche Bank's quiet title claim fails because it cannot prove good title in itself and because the HOA claims no adverse interest in the property.  (ECF No. 72).

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim."  Nev. Rev. Stat. § 40.010.  "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title."  *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted).  Therefore, for plaintiff to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others.  *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Under Federal Rule of Civil Procedure 19(a), a party must be joined as a "required" party in two circumstances: (1) when "the court cannot accord complete relief among existing parties" in that party's absence, or (2) when the absent party "claims an interest relating to the subject of the action" and resolving the action in the person's absence may, as a practical matter, "impair or impede the person's ability to protect the interest," or may "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(a)(1).

Here, the HOA is a necessary party to this action based on the current allegations and relief sought. The HOA has a present interest in the property because Deutsche Bank challenges the validity of the foreclosure sale and/or to equitably set aside the sale. *See, e.g*., *U.S. Bank, N.A. v. Ascente Homeowners Ass'n*, No. 2:15-cv-00302-JAD-VCF, 2015 WL 8780157, at *2 (D. Nev. Dec. 15, 2015). If the foreclosure sale is invalidated or set aside, the HOA's superpriority lien might be reinstated as an encumbrance against the property.

Further, the existence and priority of that lien might still be in doubt where Deutsche Bank alleges it tendered payment of that lien. "The disposition of this action in the HOA's absence may impair or impede its ability to protect its interests." *U.S. Bank, N.A.*, 2015 WL 8780157, at *2. Furthermore, if Deutsche Bank "succeeds in invalidating the sale without the HOA being a party to this suit, separate litigation to further settle the priority of the parties' respective liens and rights may be necessary." *Id*. Thus, if the HOA is dismissed as a party, Deutsche Bank would not be able to secure the complete relief it seeks. *See id*.; *see also* Fed. R. Civ. P. 19(a). Accordingly, the HOA is a proper party to Deutsche Bank's quiet title claim, and its motion to dismiss as to this claim will be denied.

**2.     *Breach of NRS 116.1113* (claim 2) *& Wrongful Foreclosure* (claim 3)**

Next, the HOA argues that the court lacks subject matter jurisdiction to consider Deutsche Bank's claims for breach of NRS 116.1113 and wrongful foreclosure pursuant to NRS 38.310. (ECF No. 72 at 5).

In response, the Banks contend that NRS 38.310 is inapplicable and that Real Estate Division of the Nevada Department of Business and Industry's ("NRED") authority expired. (ECF No. 78 at 7). Deutsche Bank asserts that it exhausted its administrative remedies or "was excused from doing so" because it submitted the dispute to NRED on December 8, 2015, and NRED failed to timely complete mediation in the allotted 60 days. (ECF No. 78 at 11). As an initial matter, NRS 38.310 is an exhaustion statute that creates prerequisites for filing certain state-law claims, not a jurisdictional statute. *See, e.g.*, *Carrington Mortg. Servs., LLC, v. Absolute Bus. Sols., LLC*, No. 2:15–cv–01862–JAD–PAL, 2016 WL 1465339, at *3 (D. Nev. Apr. 14, 2016). Thus, NRS 38.310 cannot affect the court's subject matter jurisdiction.

Section 38.310 of the Nevada Revised Statutes provides, in relevant part:

> No civil action based upon a claim relating to [t]he interpretation, application or enforcement of any covenants, conditions or restrictions applicable to residential property . . . or [t]he procedures used for increasing, decreasing or imposing additional assessments upon residential property, may be commenced in any court in this State unless the action has been submitted to mediation.

Nev. Rev. Stat. § 38.310(1).  Subsection (2) continues by stating that a "court shall dismiss any civil action which is commenced in violation of the provisions of subsection 1."  Nev. Rev. Stat. § 38.310(2).

Subsection (1) of NRS 38.330 states that "[u]nless otherwise provided by an agreement of the parties, mediation must be completed within 60 days after the filing of the written claim."  Nev. Rev. Stat. § 38.330(1).  However, nothing in NRS 38.330 provides that NRED's failure to appoint a mediator within 60 days constitutes exhaustion, nor does the statute place a burden on NRED to complete mediation within a specified period of time.

While Deutsche Bank has submitted a request for mediation, the parties have not participated in mediation.  Notably, Deutsche Bank does not assert that it included the HOA as a party in its request for mediation.  In fact, Deutsche Bank voluntarily dismissed its claims against the HOA prior to submitting its request (*See* ECF No. 38) and then later rejoined the HOA in its amended complaint (*See* ECF No. 55).  Thus, Deutsche Bank has not exhausted its administrative remedies and must mediate certain claims prior to initiating an action in court.

Further, NRS 38.350 expressly tolls the statute of limitations applicable to Deutsche Bank's claims that are subject to mediation under NRS 38.310.  Specifically, NRS 38.350 provides that "[a]ny statute of limitations applicable to a claim described in NRS 38.310 is tolled from the time the claim is submitted to mediation . . . until the conclusion of mediation . . . of the claim and the period for vacating the award has expired."  Nev. Rev. Stat. § 38.350.  Therefore, Deutsche Bank's claims are not prejudiced by the statute's requirement that the parties participate in mediation prior to initiating an action in court.

Deutsche Bank alleges that the HOA breached its duty of good faith by failing to comply with its obligations under the CC&Rs.  (ECF No. 55).  Deutsche Bank further alleges that the foreclosure conducted by the HOA was wrongful.  (ECF No. 55).

"A wrongful foreclosure claim challenges the authority behind the foreclosure, not the foreclosure act itself." *McKnight Family, L.L.P. v. Adept Mgmt.*, 310 P.3d 555, 559 (Nev. 2013) (citing *Collins v. Union Fed. Sav. & Loan*, 662 P.2d 610, 623 (Nev. 1983)).  "The material issue in a wrongful foreclosure claim is whether 'the trustor was in default when the power of sale was exercised.'" *Turbay v. Bank of Am., N.A.*, No. 2:12–CV–1367–JCM–PAL; 2013 WL 1145212, at *4 (quoting *Collins*, 662 P.2d at 623).  "Deciding a wrongful foreclosure claim against a homeowners' association involves interpreting covenants, conditions or restrictions applicable to residential property." *McKnight Family, L.L.P.*, 310 P.3d at 559.  "This type of interpretation falls under NRS 38.310." *Id.*  Additionally, NRS 38.310 applies to laws "contain[ing] conditions and restrictions applicable to residential property." *Id.* at 558.

Consequently, Deutsche Bank must first submit these claims to mediation before proceeding with a civil action.  *See e.g.*, *U.S. Bank, N.A. v. Woodchase Condo. Homeowners Ass'n*, No. 215CV01153APGGWF, 2016 WL 1734085, at *2 (D. Nev. May 2, 2016); *Saticoy Bay, LLC Series 1702 Empire Mine v. Fed. Nat'l Mortg. Ass'n*, No. 214-cv-01975-KJD-NJK, 2015 WL 5709484, at *4 (D. Nev. Sept. 29, 2015).  Therefore, Deutsche Bank's claims for breach of NRS 116.1113 (claim 2) and wrongful foreclosure (claim 3) will be dismissed without prejudice.

### 3.    *Injunctive Relief (claim 4)*

As to Deutsche Bank's second cause of action for injunctive relief, the court follows the well-settled rule in that a claim for "injunctive relief" standing alone is not a cause of action.  *See, e.g.*, *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007); *Tillman v. Quality Loan Serv. Corp.*, No. 2:12-CV-346 JCM RJJ, 2012 WL 1279939, at *3 (D. Nev. Apr. 13, 2012) (finding that "injunctive relief is a remedy, not an independent cause of action"); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action.").  Injunctive relief may be available if Deutsche Bank is entitled to such a remedy on an independent cause of action.  Deutsche Bank's claim for injunctive relief will therefore dismissed without prejudice.

### B.    **Motions for Summary Judgment** (ECF Nos. 62, 89)

In its motion, SFR moves for summary judgment on its cross/counterclaims for quiet

9

title, preliminary and permanent injunction, and slander of title (ECF No. 62), whereas the Banks

move for summary judgment on their quiet title claim (ECF No. 89).

### 1.    *Quiet Title/Declaratory Relief*

SFR argues that summary judgment in its favor and against the Banks and the borrowers is

proper on its quiet title claim because the foreclosure sale extinguished the first deed of trust

pursuant to NRS 116.3116(2).  (ECF No. 62).  In particular, SFR asserts that the Banks never

contacted NAS or the HOA prior to the foreclosure sale and never set up an escrow account to

pay the HOA's assessments.  (ECF No. 62 at 4–5).  SFR further contends that the recorded

foreclosure deed provides conclusive effect regarding the statutory prerequisites to a valid HOA

lien foreclosure sale.  (ECF No. 62).

In response, the Banks argue that the foreclosure deed is not conclusive and that BANA tendered

the superpriority portion ($765.00) on April 12, 2012, but the HOA wrongfully refused BANA's

tender.  (ECF No. 69 at 4–5).  The Banks further contend that the foreclosure sale was

commercially unreasonable and NRS Chapter 116 is unconstitutional.  (ECF No. 69).  In the

alternative, the Banks argue that *SFR Investments* should not be applied retroactively.  (ECF No.

89).

### a.    <u>Nev. Rev. Stat. § 116.31166[2]</u>

SFR asserts that its submission of a foreclosure deed issued pursuant to NRS 116.31164, which

recites compliance with the notice provisions of NRS 116.31162 through NRS 116.31168, shifts

the burden to the Banks to invalidate the foreclosure and the foreclosure deed conveying title to

SFR with evidence of fraud, unfairness, or oppression.  (ECF No. 62 at 8–11).

Section 116.3116(1) of the Nevada Revised Statutes gives an HOA a lien on its homeowners'

residences for unpaid assessments and fines; moreover, NRS 116.3116(2) gives priority to that

HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first

security interest on the unit recorded before the date on which the assessment sought to be

---

[2] The 2015 Legislature revised Chapter 116 substantially.  2015 Nev. Stat., ch. 266.  Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–12, when the events giving rise to this litigation occurred.

enforced became delinquent."  Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests.  *See* Nev. Rev. Stat. § 116.3116(2).  In *SFR Investment Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece.  The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust.  The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id*. at 415.  Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust."  *Id*. at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[3]  "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and

---

[3]  The statute further provides as follows:

2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

11

give context to NRS 116.31166." *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*").  Nevertheless, courts retain the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals.  *See id.* at 1112.

Here, SFR (and Deutsche Bank) have provided the recorded trustee's deed upon sale, the recorded notice of delinquent assessment, the recorded notice of default and election to sell, and the recorded notice of trustee's sale.  Pursuant to NRS 116.31166, these recitals in the recorded foreclosure deed are conclusive to the extent that they implicate compliance with NRS 116.31162 through NRS 116.31164, which provide the statutory prerequisites of a valid foreclosure.  *See id.* at 1112 ("[T]he recitals made conclusive by operation of NRS 116.31166 implicate compliance only with the statutory prerequisites to foreclosure.").  Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale is valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

Importantly, while NRS 116.3116 accords certain deed recitals conclusive effect—*e.g.*, default, notice, and publication of the notice of sale—it does not conclusively, as a matter of law, entitle SFR to success on its quiet title claim, as the Banks correctly argue in their response (ECF No. 69).  *See Shadow Wood*, 366 P.3d at 1112 (rejecting contention that NRS 116.31166 defeats, as a matter of law, action to quiet title).  Thus, the question remains whether the Banks demonstrated sufficient grounds to justify setting aside the foreclosure sale.  *See id.*  "When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities.  This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief."  *Id.*

### b.   Rejected Tender

The Banks argue that the foreclosure sale is void because BANA attempted to tender the superpriority amount to NAS, which NAS wrongfully rejected.  (ECF No. 69).  In particular, the Banks assert that BANA requested a payoff demand from NAS and NAS failed to respond, forcing BANA to calculate the amount necessary to satisfy the superpriority portion of the lien.  (ECF No. 69).  The Banks assert that on April 12, 2012, BANA tendered $765.00 to NAS and

NAS wrongfully rejected the tender.  (ECF No. 69, exh. 12).  The Banks thus maintain that SFR is not entitled to summary judgment.

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest.  *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

The superpriority lien portion, however, consists of "the last nine months of unpaid HOA dues ***and maintenance and nuisance-abatement charges***," while the subpriority piece consists of "all other HOA fees or assessments."  *SFR Investments*, 334 P.3d at 411 (emphasis added); *see also 7912 Limbwood Ct. Trust*, 979 F. Supp. 2d at 1150 ("The superpriority lien consists only of unpaid assessments and certain charges specifically identified in § 116.31162.").

BANA merely presumed, without adequate support, that the amount set forth in the notice of default included more than the superpriority lien portion and that $765.00 was sufficient.  (ECF No. 69 at 7–8).  While BANA asserts that NAS's rejection of the $765.00 tender was wrongful, it offers no evidence to show that the tender was sufficient or that NAS actually rejected the tender.

Further, the Banks created the problem by failing to pay the amount set forth in the notice of default, which was $1,942.90.  Had the Banks paid the amount set forth in the notice of default ($1,942.90), the HOA's interest would have been subordinate to the first deed of trust.  *See* Nev. Rev. Stat. § 116.31166(1).  Rather than tendering the $1,942.90 and then later seeking a refund of any difference, BANA decided to tender an insufficient amount ($765.00), the amount BANA calculated to be nine months of assessments.  *See SFR Investments*, 334 P.3d at 418 (noting that the deed of trust holder can pay the entire lien amount and then sue for a refund).

After failing to use the legal remedies available to them to prevent the property from being sold to a third party—for example, seeking a temporary restraining order and preliminary injunction and filling a *lis pendens* on the property (*see* Nev. Rev. Stat. §§ 14.010, 40.060)—the Banks now seek to profit from their own failure to follow the rules set forth in the statutes. *See generally, e.g.*, Nev. Rev. Stat. § 107.080 (allowing trustee's sale under a deed of trust only when a subordinate interest has failed to make good the deficiency in performance or payment for 35 days); Nev. Rev. Stat. § 40.430 (barring judicially ordered foreclosure sale if the deficiency is made good at least 5 days prior to sale); *cf. Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888) ("In the case before us, we can see no way of giving the petitioner the equitable relief she asks without doing great injustice to other innocent parties who would not have been in a position to be injured by such a decree as she asks if she had applied for relief at an earlier day.").

In their response, the Banks contend that the Nevada Supreme Court in *Horizons at Seven Hills v. Ikon Holdings*, 373 P.3d 66 (Nev. 2016) ("*Horizons*"), "confirmed the adequacy of BANA's tender by ruling unequivocally the super-priority portion of the HOA's lien is, at most, nine months of common assessments." (ECF No. 69 at 7–8). The Bank thus maintains that SFR's title is at best subject to the deed of trust. (ECF No. 69 at 8).

The Banks' reliance on *Horizons* is misplaced. In *Horizons*, the Nevada Supreme Court held that the "superpriority lien under NRS 116.3116(2) does not include fees or collection costs ***related to foreclosure***." 373 P.3d at 69 (emphasis added). The Banks do not argue that the amount set forth in the notice of default improperly included fees or collection costs related to the foreclosure. Rather, the Banks focus on exclusively the first half of the statute's language— "the last nine months of unpaid HOA due"—while ignoring the latter half at issue— "maintenance and nuisance-abatement charges." *See, e.g.*, *SFR Investments*, 334 P.3d at 411. Moreover, the facts in *Horizons* are distinguishable from the facts in the instant case. The HOA did not foreclose on the property in *Horizons*, while the HOA in the present case did. *See id.* at 68–69. Further, the *Horizons* court specified that the "maintenance or abatement" costs are not the type of collection costs relating to foreclosure that are in dispute here. *Id.* at 69 n.5. Thus,

*Horizons* provides little support to the Banks' assertion regarding the adequacy of BANA's tender.

In their motion, the Banks also cite to *Stone Hollow Ave. Trust v. Bank of Am., Nat'l Ass'n*, 382 P.3d 911 (Nev. 2016), for the proposition that an offer to pay the superpriority amount prior to the foreclosure sale preserves the lender's deed of trust.  (ECF No. 89 at 7–8). The *Stone Hollow* court, however, made no such holding.  To the contrary, the *Stone Hollow* court held that "[w]hen rejection of a tender is unjustified, the tender is effective to discharge the lien."  382 P.3d at 911.  The Banks have failed to set forth any evidence to show that the alleged rejected tender was unjustified.

Based on the foregoing, the Banks have failed to show that BANA tendered the superpriority portion of the lien prior to the foreclosure sale so as to render SFR's title subject to Deutsche Bank's deed of trust.

### c.   **Commercial Reasonability**

In its motion, SFR argues that it is entitled to quiet title because no requirement of commercial reasonableness in foreclosure sales conducted pursuant to NRS 116 exists.  (ECF No. 62 at 13). SFR contends that even if there was, the price it paid was commercially reasonable and there is no evidence of fraud, oppression, or unfairness.  (ECF No. 62 at 13–18).

In response, the Banks contend that the foreclosure sale was commercially unreasonable because of the grossly inadequate sale price and because of other factors showing unfairness of the sale such as "the fact BANA tendered the complete super-priority portion of [the HOA's] lien in advance of the sale."  (ECF No. 69 at 8).  The Banks further argue that "under the Restatement approach—adopted in *Shadow Wood*—a grossly inadequate price itself is the proof of unfairness required to set aside a foreclosure sale."  (ECF No. 69 at 9).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410.  Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on

15

foreclosure of association liens.[4]

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression."  366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016).  In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression."  *Id.* at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

Despite the Banks' assertion to the contrary, the *Shadow Wood* court did not adopt the restatement.  In fact, nothing in *Shadow Wood* suggests that the Nevada Supreme Court's adopted, or had the intention to adopt, the restatement.  *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster*

_____

[4]  *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

*v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A).  Because Nevada courts have not adopted the relevant section(s) of the restatement at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls.  *See* 639 P.2d at 530.

Further, the Banks misstate the restatement approach.  In particular, the restatement does not provide that "a grossly inadequate price itself is the proof of unfairness required to set aside a foreclosure sale."  (ECF No. 69 at 9).  While the Banks provide an accurate quote of comment B in § 8.3 of the restatement, the portion quoted offers no support to the Banks' argument that a grossly inadequate price alone is sufficient to prove unfairness.  (*See* ECF No. 69 at 10 ("a foreclosure proceeding that otherwise complies with state law may not be invalidated because of the sale price unless the price is grossly inadequate" (quoting Restatement (Third) of Prop.: Mortgages § 8.3 cmt. b))).

In its motion, SFR asserts that "not only can SFR show that the sale price itself was commercially reasonable, but there is no evidence of fraud, unfairness or oppression that accounted for or brought about a low sales price."  (ECF No. 62 at 14).  In response, the Banks argue that SFR purchased the property at less than 4% of its market value.  (ECF No. 69 at 11).  Citing to *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994) ("*BFP*"), SFR argues that a reasonable value for foreclosed real property is "the price in fact received at the foreclosure sale, so long as all of the requirements of the State's foreclosure law have been complied with."  (ECF No. 62 at 15).  SFR thus concludes that the sale price of $8,800.00 was commercially reasonable because multiple bidders attended the foreclosure sale, of which SFR was the highest bidder. (ECF No. 62 at 16).

SFR's argument and explanation of *BFP*, however, conveniently ignores the Supreme Court's explicit emphasis in that case:

> We emphasize that our opinion today covers only mortgage foreclosures of real

estate.  The considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different.

*BFP*, 511 U.S. at 537 n.3.  Further, the analysis and holding in *BFP* is inapplicable here as *BFP* involved interpreting the phrase "reasonably equivalent value" in § 548(a)(2) of the Bankruptcy Code, which is not at issue in the present case.  *See id*. at 545.

Nevada has not clearly defined what constitutes "unfairness" in determining commercial reasonableness.  The few Nevada cases that have discussed commercial reasonableness state, "every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable."  *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977).  This includes "quality of the publicity, the price obtained at the auction, [and] the number of bidders in attendance."  *Dennison v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994) (citing *Savage Constr. v. Challenge–Cook*, 714 P.2d 573, 574 (Nev. 1986)).

Nevertheless, the Banks fail to set forth any evidence in support of their valuation of the property on the date of the foreclosure sale to raise a genuine dispute regarding the purchase price.  Nor do the Banks set forth sufficient evidence to show fraud, unfairness, or oppression so as to justify the setting aside of the foreclosure sale.  The Banks rely on their repeated assertion that BANA tendered the superpriority amount to show fraud, unfairness, or oppression.  However, as the discussed in the previous section, the amount due on the date of BANA's alleged tender was $1,942.90.  Rather than tendering the noticed amount under protest so as to preserve its interest and then later seeking a refund of the difference in dispute, BANA chose to tender an insufficient amount according to its own unsubstantiated calculations ($765.00).

### d.   **Bona Fide Purchaser**

SFR contends that any irregularities with the foreclosure sale cannot be imputed onto SFR because it is a bona fide purchaser.  (ECF No. 62 at 18).  SFR argues that it is a bona fide purchaser because it paid value for the property and it lacked notice of a competing or superior interest in the property.  (ECF No. 62 at 18).

In response, the Banks dispute SFR's status as a bona fide purchaser.  (ECF No. 69 at 14–16).  In particular, the Banks argue that SFR is charged with notice of the deed of trust and the risk of litigation, precluding such status.  (ECF No. 69 at 14).  The Banks further contend that SFR does

not qualify as a bona fide purchaser as SFR merely assumed, without any diligent inquiry, that the foreclosure sale included a superpriority lien and was properly conducted.  (ECF No. 69 at 14).

The issue of bona fide purchaser ("BFP") status is distinct from that of the conclusiveness of deed recitals.  Specifically, the issue of BFP status concerns a buyer's knowledge of competing interests, whereas the other concerns a statutory presumption that can be equitably overcome under *Shadow Wood Homeowners Assoc., Inc.  See, e.g.*, *Nationstar Mortg., LLC*, 184 F. Supp. 3d at 859–60.

A BFP is a person who purchases real property "for a valuable consideration and without notice of the prior equity, and without notice of facts which upon diligent inquiry would be indicated and from which notice would be imputed to him, if he failed to make such inquiry."  *Bailey v. Butner*, 176 P.2d 226, 234 (Nev. 1947) (emphasis omitted); *see also Moore v. De Bernardi*, 220 P. 544, 547 (Nev. 1923) ("The decisions are uniform that the bona fide purchaser of a legal title is not affected by any latent equity founded either on a trust, [e]ncumbrance, or otherwise, of which he has no notice, actual or constructive.").  Under Nevada law, "bona fide purchaser" means as follows:

> Any purchaser who purchases an estate or interest in any real property in good faith and for valuable consideration and who does not have actual knowledge, constructive notice of, or reasonable cause to know that there exists a defect in, or adverse rights, title or interest to, the real property is a bona fide purchaser.

Nev. Rev. Stat. § 111.180(1).  In other words, a later-obtained interest can prevail over an earlier-obtained interest where the later purchaser has no knowledge of the previous interest and records his/her interest first.  *See Nationstar Mortg., LLC*, 184 F. Supp. 3d at 860.

SFR argues that it paid value, $8,800.00, for the property and took without notice of a competing or superior interest in the property at the time of the foreclosure sale.  (ECF No. 62 at 18–19).  The Banks provide no competent evidence sufficient to raise a genuine dispute as to SFR's status as a bona fide purchaser.  Rather, the Banks merely assert without adequate support that SFR is a professional property purchaser and concludes that such basis alone is sufficient to preclude SFR's status as a BFP.  (ECF No. 69 at 14–16).  Such conclusory allegations without specific

facts supported by competent evidence is insufficient to raise a genuine issue for trial.  *See*

*Celotex*, 477 U.S. at 324.

### e.    <u>Due Process</u>

The Banks contend that summary judgment in their favor is proper pursuant to *Bourne Valley*

*Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016) ("*Bourne Valley*").  (ECF

No. 89 at 9–10).  The Banks assert that any issues regarding actual notice is irrelevant in light of

*Bourne Valley*.  (ECF No. 89 at 12–13).

The Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required a HOA to

alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested

notice, facially violated mortgage lenders' constitutional due process rights.  *Bourne Valley*, 832

F.3d at 1157–58.  The facially unconstitutional provision, as identified in *Bourne Valley*, exists

in NRS 116.31163(2).  *See id.* at 1158.  At issue is the "opt-in" provision that unconstitutionally

shifts the notice burden to holders of the property interest at risk.  *See id.*

To state a procedural due process claim, the Banks must allege "(1) a deprivation of a

constitutionally protected liberty or property interest, and (2) a denial of adequate procedural

protections."  *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th

Cir. 1998).  The Banks have satisfied the first element as a deed of trust is a property interest

under Nevada law.  *See* Nev. Rev. Stat. § 107.020 *et seq.*; *see also Mennonite Bd. of Missions v.*

*Adams*, 462 U.S. 791, 798 (1983) (stating that "a mortgagee possesses a substantial property

interest that is significantly affected by a tax sale").  However, the Banks fail on the second

prong.

Due process does not require actual notice.  *Jones v. Flowers*, 547 U.S. 220, 226 (2006).  Rather,

it requires notice "reasonably calculated, under all the circumstances, to apprise interested parties

of the pendency of the action and afford them an opportunity to present their objections."

*Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950); *see also Bourne*

*Valley*, 832 F.3d at 1158.

Here, adequate notice was given to the interested parties prior to extinguishing a property

right.  BAC recorded its assignment deed on June 13, 2011.  NAS recorded a notice of default

and election to sell on August 30, 2012, and sent (by certified mailed) copies of the notice to interested parties, including BAC.  (*See* ECF No. 62-12).

As a result, the notice of trustee's sale was sufficient notice to cure any constitutional defect inherent in NRS 116.31163(2) as it put BAC (BANA by merger) on notice that its interest was subject to pendency of action and offered all of the required information.  Thus, the Banks' motion for summary judgment will be denied as to this issue.

### f.     Retroactivity

The Banks contend that *SFR Investments* should not be applied retroactively to extinguish the first deed of trust.  (ECF No. 89 at 13).

The Nevada Supreme Court has since applied the *SFR Investments* holding in numerous cases that challenged pre-*SFR Investments* foreclosure sales. *See, e.g.*, *Centeno v. Mortg. Elec. Registration Sys., Inc.*, No. 64998, 2016 WL 3486378, at *2 (Nev. June 23, 2016); *LN Mgmt. LLC Series 8301 Boseck 228 v. Wells Fargo Bank, N.A*., No. 64495, 2016 WL 1109295, at *1 (Nev. Mar. 18, 2016) (reversing 2013 dismissal of quiet-title action that concluded contrary to *SFR Investments*, reasoning that "the district court's decision was based on an erroneous interpretation of the controlling law"); *Mackensie Family, LLC v. Wells Fargo Bank, N.A*., No. 65696, 2016 WL 315326, at *1 (Nev. Jan. 22, 2016) (reversing and remanding because "[t]he district court's conclusion of law contradicts our holding in *SFR Investments Pool 1 v. U.S. Bank*").  Thus, *SFR Investments* applies to this case.

In light of the foregoing, the court finds that the Banks have failed to raise a genuine dispute so as to preclude summary judgment in favor of SFR on its quiet title claim.  Nor have the Banks established that they are entitled to summary judgment in their favor.  Accordingly, the court will grant SFR's motion for summary judgment (ECF No. 62) on its quiet title claim against the Banks, and deny the Banks' motion for summary judgment (ECF No. 89).

As to the borrowers, SFR filed proof of service as to the borrowers on July 20, 2016, and to date, the borrowers have yet to plead or otherwise defend in the instant action.  (ECF Nos. 60, 61).

NAS sent (by certified mailed) copies of the notice of trustee's sale to the borrowers.  (*See* ECF No. 62-12).  Thus, the court will likewise grant SFR's motion for summary judgment on its quiet

title claim against the borrowers.

**2.**    ***Preliminary & Permanent Injunction*** *(cross/counterclaim 2)*

SFR requests that the Banks and the borrowers be enjoined from any sale or transfer that would affect SFR's title to the property.  (ECF No. 62).

As discussed above, the court follows the well-settled rule that a claim for "injunctive relief" standing alone is not a cause of action.  Thus, the court will dismiss this claim without prejudice.

**3.**    ***Slander of Title*** *(cross/counterclaim 3)*

SFR contends that it is entitled to summary judgment on its slander of title claim because the Banks recorded documents against the property despite *SFR Investments* and knowledge that the foreclosure sale had already occurred.  (ECF No. 62 at 21).

In response, the Banks argue that no slander of title occurred because a dispute over title exists. (ECF No. 69 at 19).

Under Nevada law, a slander of title claim involves (1) false and malicious communications (2) disparaging to one's title in land (3) causing special damages.  *See Higgins v. Higgens*, 744 P.2d 530, 531 (Nev. 1987) (citations omitted); *see also Rowland v. Lepire*, 662 P.2d 1332, 1335 (Nev. 1983) ("The requisites to an action for slander of title are that the words spoken be false, that they be maliciously spoken and that the plaintiff sustain some special damage as a direct and natural result of their having been spoken.").  Additionally, a defendant must know that "the statement was false or act in reckless disregard of its truth or falsity."  *Rowland*, 662 P.2d at 1335.

Further, a "plaintiff alleging a claim for slander of title must meet a heightened pleading standard."  *See, e.g.*, *Velazquez v. Mortg. Elec. Registration Sys., Inc.*, No. 2:11-CV-576 JCM CWH, 2012 WL 5288141, at *5 (D. Nev. Oct. 23, 2012).

Here, SFR fails to assert any words spoken by the Banks, let alone any false words spoken by them.  SFR relies on the recorded assignments, arguing that the statements contained therein were false, but fails to provide any evidence that these recordings were maliciously filed. Further, while SFR asserts that the Banks knew that the deed of trust was extinguished because of *SFR Investments*, the Banks initiation of the instant action for declaratory relief suggests the

contrary.

Accordingly, SFR has failed to show that it is entitled to judgment as to this claim, and the court will deny SFR's motion for summary judgment on its slander of title claim.

**IV.    Conclusion**

Based on the aforementioned, the court will grant the HOA's motion to dismiss (ECF No. 72) without prejudice as to claims (2) through (4) of Deutsche Bank's amended complaint (ECF No. 55), but deny the motion as to Deutsche Bank's quiet title claim.

Further, the court will grant SFR's motion for summary judgment (ECF No. 62) as to its quiet title claim against the Banks and the borrowers, but deny the motion as to the slander of title claim; the court will dismiss SFR's claim for injunctive relief.  SFR has met its burden of demonstrating that there is no genuine issue of material fact as to its quiet title claim against the Banks and borrowers and is entitled to judgment as a matter of law.  Thus, SFR is entitled to a declaratory judgment that the Banks's first deed of trust was extinguished pursuant to the properly conducted foreclosure sale, whereat SFR purchased the property for value in the amount of $8,800.00, and prior to the Banks failed to tendered the noticed amount.

Furthermore, the court will deny the Banks' motion for summary judgment.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the HOA's motion to dismiss (ECF No. 72) be, and the same hereby is, GRANTED IN PART and DENIED IN PART consistent with the foregoing.

IT IS FURTHER ORDERED that SFR's motion for summary judgment (ECF No. 62) be, and the same hereby is, GRANTED IN PART and DENIED IN PART consistent with the foregoing.

IT IS FURTHER ORDERED that the Banks' motion for summary judgment (ECF No. 89) be, and the same hereby is, DENIED.

DATED THIS 24th day of February, 2017.

JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE